# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

SANDRA ENGLISH,                    )
ADMINISTRATRIX OF THE ESTATE       )
OF RICHARD DeLYNN FIELDS,          )
                                   )
         Plaintiff,       )
                                   )
    v.                          )        1:09CV866
                                   )
JAMES MURPHY, et al.,              )
                                   )
         Defendants.      )

## MEMORANDUM OPINION, RECOMMENDATION, AND ORDER
## OF UNITED STATES MAGISTRATE JUDGE

This case comes before the undersigned United States Magistrate Judge for a recommended ruling on Defendants Sheriff Shepard Jones, Deputy Sheriff James Nichols and Deputy Sheriff Lloyd Goins' Motion to Dismiss (Docket Entry 19) and for disposition of Plaintiff's Motion to Allow Discovery (Docket Entry 35). For the reasons that follow, the Court should grant Defendants' instant Motion in part in that the Court should dismiss Plaintiff's claims for violations of 42 U.S.C. § 1983 against Defendants Nichols, Goins and Deputy John Doe (Docket Entry 1, ¶¶ 49-58) and violations of 42 U.S.C. § 1983 against Defendant Jones (id. ¶¶ 59-66) for failure to state a claim upon which relief can be granted. In addition, the Court should exercise its discretion under 28 U.S.C. § 1367 to dismiss Plaintiff's remaining state law causes of action without prejudice to their pursuit in state court. In light of the foregoing recommendations, Plaintiff's instant Motion will be denied as moot.

This action arises out of the death of Plaintiff's brother, Richard DeLynn Fields ("Fields"), as the result of an altercation between Fields and another detainee during Fields' pretrial detention at the Scotland County Detention Center ("SCDC"). (See id., ¶¶ 17-44.) According to the Complaint, Fields was held "in a minimum security block with Defendant Murphy" at SCDC. (Id., ¶ 20.) Allegedly, at some point prior to the incident causing Fields's death, Fields and Defendant Murphy "had an altercation" (id., ¶ 21), which "involved threats of physical violence and assaults on [] Fields by Defendant Murphy" (id., ¶ 22). The Complaint further alleges that "Fields, or someone on his behalf, reported th[is] incident to the jailors" (id., ¶ 21), but that "Defendants at [SCDC] failed to relocate [] Fields to another location to protect him from potential assaults from Defendant Murphy" (id., ¶ 23).

The Complaint goes on to assert that, "independently and in conjunction with the threats from Defendant Murphy, [] Fields began to exhibit abnormal behavior, in that; he could not complete sentences, and when he spoke he did not form or communicate lucid thoughts." (Id., ¶ 24.) According to the Complaint, "Fields requested to be seen by the nurse . . . [but] was deprived [of] medical attention by failing to be brought in front of the nurse, physician or to the hospital for evaluation." (Id., ¶ 26.) However, the Complaint acknowledges that, on the evening in question, "Fields was removed from the cell and placed in a cell by

-2-

himself." (Id., ¶ 28.) Allegedly, while held in a separate cell, "Fields attempted to communicate with the jailors . . . by banging his hands on the cell door to request medical attention." (Id., ¶ 29.) Moreover, "Fields [allegedly continued to] exhibit[] abnormal behavior which included, but was not limited to, yelling and screaming, urinating and defecating on himself, and continued abnormal speech." (Id., ¶ 30.)

The Complaint alleges that, the next morning (at approximately 7:20 a.m.), "Fields was released from his individual cell and returned to the cell which also housed Defendant Murphy." (Id., ¶ 31.) Purportedly, "upon entering the cell with Defendant Murphy, [] Fields, still in an abnormal state, shouted, 'Merry Christmas'" (id., ¶ 32), at which point Defendant Murphy "pushed [Fields] into the door of the cell which resulted in a wound to the back of [] Fields' head resulting in serious bleeding" (id., ¶ 33). Allegedly, "Fields requested, yet again, for medical attention for his serious medical needs" (id., ¶ 34), but "was not assessed by the [] nurse . . . until some time later and was not transported to the hospital until approximately 8:17 a.m." (id., ¶ 35). The Complaint further alleges that Fields was then "transported to Scotland Memorial Hospital [where] he was assessed by the Emergency Room team and transferred via helicopter to UNC Hospital in Chapel Hill" (id., ¶ 36), but, "[b]ecause no member of the Scotland County Sheriff's Department was present with [] Fields at Scotland Memorial Hospital, his emergency treatment and transport to UNC

-3-

Hospital was significantly delayed" (id., ¶ 37).[1]  Fields was pronounced dead at UNC Hospital.  (Id., ¶ 38.)

The Complaint also alleges that, during the relevant period of Fields's detention, "[Defendants] Jones, [] Nichols, [] Goins, and [] Doe, and possibly other unnamed Defendants which are unknown to Plaintiff at this time, were 'on duty' and in charge of [SCDC]." (Id., ¶ 19.)  Based on the foregoing allegation of their presence at SCDC, the Complaint asserts in conclusory fashion: "[Defendant] Jones, [] Nichols, [] Goins, and [] Doe, knew of [] Fields' serious medical needs and intentionally and deliberately withheld necessary medical treatment" (id., ¶ 39) and, "[i]n light of the facts and circumstances surrounding the death of [] Fields, the acts and omissions of [Defendants] Jones, [] Nichols, [] Goins, and [] Doe were committed with deliberate indifference to the rights, safety, welfare and wellbeing of [] Fields" (id., ¶ 40).

As grounds for relief, the Complaint sets forth the following claims: (1) battery against Defendant Murphy (see id., ¶¶ 45-48); (2) violations of 42 U.S.C. § 1983 against Defendants Nichols, Goins and John Doe in their individual and official capacities (id., ¶¶ 49-58); (3) violations of 42 U.S.C. § 1983 against Defendant Jones in his individual and official capacities (id., ¶¶ 59-66); (4) negligence against Defendant Jones (id., ¶¶ 67-76);

---

[1] Plaintiff's Brief in Opposition to the instant Motion explains that "Fields' transfer to UNC Hospital via helicopter was significantly delayed because the Scotland County Sheriff's Department had abandoned [Fields] at the hospital and the helicopter was not authorized to transport an inmate without a Sheriff escort."  (Docket Entry 23 at 4.)

and (5) violation of Article I of the Constitution of the State of North Carolina (as an alternative claim should the Court find that sovereign or governmental immunity bars Plaintiff's other claims) (id., ¶¶ 83-87).[2]  Defendants Jones, Nichols, and Goins' instant Motion contends that the Complaint fails to state a claim upon which relief can be granted, such that the Court should dismiss it pursuant to Federal Rule of Civil Procedure 12(b)(6).  (See Docket Entry 19 at 1.)[3]

## STANDARD

A plaintiff fails to state a claim when the complaint does not "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (emphasis added) (internal citations omitted) (quoting Bell Atlantic Corp. v. Twombly, 550

---

[2] Plaintiff's Complaint also asserted a claim for negligence against "North Carolina Department of Health and Human Services, Division of Health Service Regulation, Jails and Detention Section."  (See Docket Entry 1, ¶¶ 77-82.)  Plaintiff voluntarily dismissed the North Carolina Department of Health and Human Services as a party to this action.  (See Docket Entry 11.)  Finally, the Complaint names the North Carolina Association of County Commissioners as a Defendant solely in its capacity as "surety for [Defendant] Jones [with liability] for the unlawful acts of [Defendants] Jones, [] Nichols, [] Goins, and [] Doe under the surety bond."  (Docket Entry 1, ¶ 11.)

[3] In addition to challenging the legal sufficiency of the claims explicitly asserted by Plaintiff, Defendants' instant Motion contends that the Complaint fails to state a claim against Defendants Jones, Nichols, and/or Goins for a violation of the Eighth Amendment of the United States Constitution.  (See Docket Entry 20 at 5-6.)  Because the undersigned does not construe the Complaint as asserting an Eighth Amendment claim, but rather merely referencing the Eighth Amendment's deliberate indifference standard (as Plaintiff contends in her Response (see Docket Entry 23 at 7-8)), the undersigned does not address that portion of Defendants' instant Motion.

-5-

U.S. 544, 570 (2007)). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of "entitlement to relief."'" Id. (quoting Twombly, 550 U.S. at 557). This standard "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Id. In other words, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id.[4]

## DISCUSSION

### I. Nichols, Goins & Doe - Section 1983 - Individual Capacities

The Complaint appears to assert that Defendants Goins, Nichols, and Doe disregarded a substantial risk of harm and thus violated Plaintiff's constitutional rights in three separate instances: (1) failing to keep Fields separate from Defendant Murphy after their initial altercation (Docket Entry 1, ¶¶ 23, 50); (2) failing to adequately address Fields' serious medical needs associated with his abnormal behavior (id., ¶¶ 26, 53); and (3) failing to adequately address Fields' serious medical needs after he suffered a head wound at the hands of Defendant Murphy (id., ¶¶ 34-37, 53). "As a pretrial detainee, [Plaintiff's] treatment and the conditions of his restraint are evaluated under

---

[4] "[D]etermining whether a complaint states on its face a plausible claim for relief and therefore can survive a Rule 12(b)(6) motion . . . requires the reviewing court to draw on its judicial experience and common sense." Francis v. Giacomelli, 588 F.3d 186, 193 (4th Cir. 2009).

the Due Process Clause of the Fourteenth Amendment." <u>Robles v.</u>
<u>Prince George's Cnty., Md.</u>, 302 F.3d 262, 269 (4th Cir. 2002);
<u>accord</u> <u>Bell v. Wolfish</u>, 441 U.S. 520, 535 n.16 (1979) ("The Court
of Appeals properly relied on the Due Process Clause rather than
the Eighth Amendment in considering the claims of pretrial
detainees."). For pertinent purposes, however, the Eighth and
Fourteenth Amendments provide the same guarantee, i.e., "when the
State takes a person into its custody and holds him there against
his will, the Constitution imposes upon it a corresponding duty to
assume <u>some responsibility for his safety and general well-being</u>."
<u>DeShaney v. Winnebago Cnty. Dep't of Soc. Servs.</u>, 489 U.S. 189,
199-200 (1989) (emphasis added). In other words, "when the State
by the affirmative exercise of its power so restrains an
individual's liberty that it renders him unable to care for
himself, and at the same time fails to provide for his <u>basic human</u>
<u>needs</u> — e.g., food, clothing, shelter, <u>medical care</u>, and <u>reasonable</u>
<u>safety</u> — it transgresses the substantive limits on state action set
by the Eighth Amendment <u>and</u> the Due Process Clause." <u>Id.</u> at 200
(emphasis added).

     "It is not, however, every injury suffered by one prisoner [or
detainee] at the hands of another that translates into
constitutional liability for prison [or jail] officials responsible
for the victim's safety." <u>Farmer v. Brennan</u>, 511 U.S. 825, 834
(1994). Indeed, the United States Supreme Court expressly has
"held that the Due Process Clause of the Fourteenth Amendment is
not implicated by the lack of due care of an official causing

                              -7-

unintended injury to life, liberty or property." <u>Davidson v.</u>
<u>Cannon</u>, 474 U.S. 344, 347 (1986). Plaintiff thus cannot maintain
a claim based on evidence merely sufficient to support a finding
that Defendants "negligently failed to protect him from another
inmate . . . [because] lack of care simply does not approach the
sort of abusive governmental conduct that the Due Process Clause
was designed to prevent." <u>Id.</u> at 347-48 (internal quotation marks
omitted).

Instead, this standard applies:

> <u>First</u>, a constitutional violation occurs only where the
> deprivation alleged is "objectively, sufficiently
> serious." For a claim based on a failure to prevent
> harm, a [plaintiff] must show that he [was] detained or
> incarcerated "under conditions posing a <u>substantial risk</u>
> <u>of serious harm</u>." . . . <u>Second</u>, an official must have
> "a sufficiently culpable state of mind." In
> prison[/jail]-conditions cases, the requisite state of
> mind is "<u>deliberate indifference</u>."

<u>Brown v. Harris</u>, 240 F.3d 383, 388-89 (4th Cir. 2001) (quoting
<u>Farmer</u>, 511 U.S. at 834) (internal citations and secondary internal
quotation marks omitted) (emphasis added).[5] Similarly, as to
claims based on denial of medical care, Plaintiff "must demonstrate
that the [officials] acted with 'deliberate indifference'

---

[5] As the United States Court of Appeals for the Fourth Circuit
has observed, <u>Farmer</u> "addressed only the duties of 'prison
officials' under the Eighth Amendment. <u>Farmer</u>, however, merely
defined the term 'deliberate indifference,' a standard previously
employed by the Supreme Court in <u>Estelle v. Gamble</u>, 429 U.S. 97
(1976), and its progeny. <u>See</u> <u>Farmer</u>, 511 U.S. at 829. <u>Farmer</u> in
no way undermined [the Fourth Circuit's prior] holding . . . that
the same 'deliberate indifference' standard applies to both inmates
and pretrial detainees. Indeed, other circuits have imported the
<u>Farmer</u> framework into cases involving pretrial detainees." <u>Brown</u>,
240 F.3d at 388 n.6 (internal parallel citations omitted).

-8-

(subjective) to the inmate's 'serious medical needs' (objective)."
Iko v. Shreve, 535 F.3d 225, 241 (4th Cir. 2008).

"Deliberate indifference is a very high standard – a showing of mere negligence will not meet it." Grayson v. Peed, 195 F.3d 692, 695 (4th Cir. 1999). Instead, the "deliberate indifference" prong requires Plaintiff to make "two showings":

> First, the evidence must show that the official in question subjectively recognized a substantial risk of harm. It is not enough that the [official] *should have* recognized it; [he] actually must have perceived the risk. Second, the evidence must show that the official in question subjectively recognized that his actions were inappropriate in light of that risk. As with the subjective awareness element, it is not enough that the official *should have* recognized that his actions were inappropriate; the official actually *must have* recognized that his actions were insufficient.

Parrish ex rel. Lee v. Cleveland, 372 F.3d 294, 303 (4th Cir. 2004) (internal citations and quotation marks omitted) (emphasis in original). "The subjective component therefore sets a particularly high bar to recovery." Iko, 535 F.3d at 241.

Under this standard, the Complaint lacks sufficient factual allegations to support a plausible claim to relief under Section 1983. As a general matter, the Complaint does not specify who received notice of the prior altercation between Fields and Defendant Murphy, who failed to separate Fields from Defendant Murphy, who deprived Fields of medical care, or who failed to remain with Fields at the hospital (thereby delaying Fields' transport to UNC Hospital). (See Docket Entry 1, ¶¶ 17-44.) Rather, the Complaint merely alleges that "[Defendants] Jones, [] Nichols, [] Goins, and [] Doe . . . were 'on duty' and in charge of

-9-

[SCDC]" (id., ¶ 19) and appears to conclude as a result that "[Defendants] Jones, [] Nichols, [] Goins, and [] Doe, knew of [] Fields' serious medical needs and intentionally and deliberately withheld necessary medical treatment" (id., ¶ 39). In this same vein, Plaintiff's Response Brief argues:

> [SCDC] is not the massive multi-floor complex like those in Greensboro and Winston-Salem, but is a small two story building attached to the Sheriff's office and Courthouse for Scotland County. Upon information and belief, there are no more than five jailors on duty at one time in the jail. It is ridiculous to postulate that [Fields] was returned to the cell with Defendant Murphy under this own power unescorted by a jailor. Moreover, it is ridiculous to assert that those on duty and in charge of [SCDC] did not personally participate in the management and execution of [SCDC's] activities on the date [] Fields was attacked, injured and later succumbed to those injuries.

(Docket Entry 23 at 11.)

Plaintiff's argument resembles a res ipsa loquitor theory. In other words, despite failing to allege an affirmative act (or omission) on the part of any specific Defendant, Plaintiff appears to contend that, because these individuals were on duty at the relevant time in a small facility, they must have played some role in the alleged events. Such allegations do not support a claim under the high standard of deliberate indifference. See Clark-Murphy v. Foreback, 439 F.3d 280, 286 (6th Cir. 2006) (finding res ipsa loquitor rationale insufficient to establish deliberate indifference); Spears v. Meeks, No. 2:10-CV-671-WKW, 2011 WL 1563062, at *5 (M.D. Ala. Apr. 26, 2011) (unpublished) ("[A] plaintiff may not resort to [res ipsa loquitor] to state a plausible § 1983 claim for deliberate indifference to medical needs

against an individual prison official . . . .").  The Complaint otherwise fails to include any non-conclusory factual allegations that any Defendant actually knew of, and/or took part in, the alleged events.  (See Docket Entry 1, ¶¶ 17-44.)

Regardless, even if the Complaint did identify the responsible individual with respect to the alleged actions detailed therein, the factual allegations, accepted as true, amount, at most, to negligence and thus fall short of establishing deliberate indifference.  Courts have "concluded that a prison official acts with deliberate indifference when he ignores repeated requests from a vulnerable inmate to be separate from a fellow inmate who has issued violent threats which the aggressor will likely carry out in the absence of official intervention."  Odom v. South Carolina Dep't of Corr., 349 F.3d 765, 773 (4th Cir. 2003) (emphasis added). However, "threats between inmates are common and do not, in every circumstance, serve to impute actual knowledge of a substantial risk of harm."  Blades v. Scheutzle, 302 F.3d 801, 804 (8th Cir. 2002) (internal quotation marks and citations omitted); see also Prater v. Dahm, 89 F.3d 538 (8th Cir. 1996) (finding plaintiff's allegations insufficient to support inference of substantial risk of harm where plaintiff had alleged only that fellow inmate had made threats against him).  Here, even if the Court accepted Plaintiff's conclusory allegations that Defendants Jones, Nichols, Goins and Doe had knowledge of threats by Defendant Murphy, the Complaint acknowledges that Fields and Defendant Murphy subsequently coexisted peacefully for some period of time before

-11-

Fields' removal (presumably due to Fields' "abnormal" behavior) (see id., ¶¶ 28, 31).  Under those circumstances, no grounds exist for concluding that any Defendant acted with deliberate indifference to a substantial risk of harm.

With respect to deliberate indifference to Fields' serious medical needs, the Complaint lacks factual allegations supporting a contention that the medical treatment Fields received was "so grossly incompetent, inadequate or excessive as to shock the conscience or to be intolerable to fundamental fairness," Miltier v. Beorn, 896 F.2d 848, 851 (4th Cir. 1990). (See Docket Entry 1, ¶¶ 17-44.)  The Complaint contains no factual allegations that Fields' alleged "abnormal" behavior prior to the alleged altercation that resulted in his head wound, in fact, occurred due to a serious medical condition at all.  (See id.)  Even if the Complaint did allege a serious medical condition related to that "abnormal" behavior, prison officials "'must both be aware of facts from which the inference can be drawn that a substantial risk of serious harm exists, and [] must also draw the inference.'" Johnson v. Quinones, 145 F.3d 164, 168 (4th Cir. 1998) (quoting Farmer, 511 U.S. at 837) (emphasis added).  Because the Complaint lacks factual allegations that would support an inference that Defendants Nichols, Goins or Doe drew an inference of Fields' serious medical condition based on his "abnormal" behavior, the Complaint falls short.  See Brice v. Virginia Beach Corr. Ctr., 58 F.3d 101, 105 (4th Cir. 1995) ("Actual knowledge or awareness on

the part of the [official is] essential to proof of deliberate indifference.").[6]

Finally, the allegations regarding Fields' treatment after suffering his head wound also fail to state a claim for deliberate indifference. The Complaint alleges that, "at approximately 7:20 a.m.," Fields returned to the cell containing Defendant Murphy (Docket Entry 1, ¶ 31), that Defendant Murphy then injured Fields (id., ¶ 32), that the nurse did not assess Fields "until some time later" (id., ¶ 35), that jail officials did not transport Fields to Scotland Memorial Hospital "until approximately 8:17 a.m." (id.), and that the absence of a member of the Scotland County Sheriff's Department delayed Field's transport to UNC Hospital (id., ¶ 37). None of those allegations, even accepted as true, "shock the conscience or [are] intolerable to fundamental fairness," Miltier, 896 F.2d at 851.[7] Rather, it appears Fields

_____

[6] Moreover, on these factual allegations, no basis exists for the Court to substitute its own judgment for the judgment of prison officials as to either the need to separate Fields and Defendant Murphy or Fields' need for immediate medical attention. See, e.g., Florence v. Board of Chosen Freeholders of Cnty. of Burlington, ___ U.S. ___, ___, 132 S. Ct. 1510, 1515 (2012) ("The difficulties of operating a detention center must not be underestimated by the courts. Jails (in the stricter sense of the term, excluding prison facilities) admit more than 13 million inmates a year. The largest facilities process hundreds of people every day; smaller jails may be crowded on weekend nights, after a large police operation, or because of detainees arriving from other jurisdictions. . . . [As a result, jail officials] must have substantial discretion to devise reasonable solutions to the problems they face." (internal citations omitted)).

[7] Any assertion that Defendants failed to comply with SCDC policy (see Docket Entry 1, ¶¶ 50, 51, 61) does not establish deliberate indifference. See, e.g., Moore v. Davis, No. 8:11-cv-01173-DCN-JDA, 2012 WL 2890893, at *5 n.5 (D.S.C. May 22, 2012) (continued...)

-13-

was transported to Scotland Memorial Hospital within an hour of his injury (see Docket Entry 1, ¶¶ 31, 35), during which intervening time he received treatment by the nurse (see id., ¶ 35).

In sum, Plaintiff's Section 1983 individual capacity claims against Defendants Nichols, Goins, and Doe fail as a matter of law.

## II. Jones - Section 1983 - Individual Capacity

Plaintiff's claim against Defendant Jones in his individual capacity appears to rest either on supervisory liability or a failure to train theory. (See id., ¶¶ 59-66.)[8] As to the first of these potential rationales, "[s]upervisory officials may be liable under § 1983 if '(1) . . . the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed "a pervasive and unreasonable risk" of constitutional injury to citizens like the plaintiff; (2) . . . the supervisor's response to that knowledge was so inadequate as to show "deliberate

_____

[7](...continued)
(unpublished) ("To the extent [the] [p]laintiff complains that officials at [Greenwood County Detention Center ('GCDC')] failed to comply with GCDC's own policy to house inmates in separate housing units following threatening language, such a claim fails, as prison officials' failure to follow their own policies or procedures, standing alone, does not amount to a constitutional violation, *Keeler v. Pea*, 782 F.Supp. 42, 44 (D.S.C. 1992) (holding violations of prison policies which fail to reach the level of a constitutional violation are not actionable under § 1983); *see also Riccio v. Cnty. of Fairfax*, 907 F.2d 1459, 1469 (4th Cir. 1990) (holding if state law grants more procedural rights than the Constitution requires, a state's failure to abide by that law is not a federal due process issue).").

[8] To the extent Plaintiff seeks to assert a claim against Defendant Jones for his role directly based on the assertion that he "w[as] 'on duty'" along with the other Defendants (Docket Entry 1, ¶ 19), Plaintiff's claim fails for the reasons discussed in Section I.

indifference to or tacit authorization of the alleged offensive practices []"; and (3) . . . there was an "affirmative causal link" between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff.'" McFadyen v. Duke Univ., 786 F. Supp. 2d 887, 963 (M.D.N.C. 2011) (Beaty, C.J.) (quoting Shaw v. Stroud, 13 F.3d 791, 799 (4th Cir. 1994)) (alterations provided by McFadyen), rev'd in part on other grounds, 703 F.3d 636 (4th Cir. 2012). Other recent authority has further fleshed out the foregoing requirements:

> To meet the first requirement, the plaintiff must proffer evidence that the misconduct has occurred on other occasions or is "widespread." [*Shaw*, 13 F.3d at 799.] Further, to establish that the supervisor's response is deliberately indifferent, the plaintiff must show the supervisor's "'continued inaction in the face of documented widespread abuses,'" which is a "heavy burden." *Id.* (quoting *Slakan v. Porter*, 737 F.2d 368, 372-73 (4th Cir. 1984)). Finally, the plaintiff may show an affirmative causal link between the supervisor's response and the plaintiff's injury when the injury is a "natural consequence[ ]" of the supervisor's inaction. *Id.* at 800 (quoting *Slakan*, 737 [F.2d] at 376).

Goodwin v. Beasley, No. 1:09CV151, 2011 WL 238640, at *1 (M.D.N.C. Jan. 24, 2011) (Tilley, J.) (unpublished).

As an initial matter, the absence of any underlying constitutional injury (as detailed in Section I), defeats this theory of liability. Moreover, the factual allegations contained in the Complaint against Defendant Jones based on his supervisory authority fail because Plaintiff has alleged no more than a single incident, much less "continued inaction in the face of documented widespread abuses," Goodwin, 2011 WL 238640, at *1. (See Docket

-15-

Entry 1, ¶¶ 17-44.)  The Complaint thus fails to state a claim against Defendant Jones premised on his supervisory position.

To the extent Plaintiff's claim alleges a failure of Defendant Jones to adequately train Defendants Nichols, Goins, and/or Doe, "the inadequacy of police training may serve as the basis for § 1983 liability only where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact." City of Canton v. Harris, 489 U.S. 378, 388 (1989).  "[D]eliberate indifference in the context of failure-to-train arises when 'in light of the duties assigned to specific officers . . . the need for more or different training is so obvious, and the inadequacy [is] so likely to result in the violation of constitutional rights.'" Goodwin, 2011 WL 238640, at *1 (quoting Canton, 489 U.S. at 390) (alterations provided by Goodwin).

Again, given the absence of an underlying constitutional injury, Plaintiff cannot proceed on this theory of liability.  See Young v. City of Mount Ranier, 238 F.3d 567, 579 (4th Cir. 2001) ("The law is quite clear in this circuit that a section 1983 failure-to-train claim cannot be maintained against a governmental employer in a case where there is no underlying constitutional violations by the employee.").  In addition, Plaintiff has failed to allege any facts regarding the training as it existed or any inadequacy as to such training.  (See Docket Entry 1.) Accordingly, the Complaint's individual capacity claim against

Defendant Jones under Section 1983 based on a failure-to-train theory also fails as a matter of law.

III. <u>Section 1983 Official Capacity Claims</u>

Plaintiff's official capacity claims against Defendants Jones, Nichols, Goins, and Doe represent claims against the government entity associated with those individuals. See <u>Nivens v. Gilchrist</u>, 444 F.3d 237, 249 (4th Cir. 2006). "Some uncertainty exists as to the proper nomenclature for the local government entity associated with North Carolina sheriffs and their personnel and as to the capacity of any such entity to be sued." <u>McNeil v. Guilford Cnty. Sheriff Dep't</u>, No. 1:09CV999, 2010 WL 377000, at *3 n.3 (M.D.N.C. Jan. 25, 2010) (unpublished) (citing cases). However, regardless of the identity of the entity in question, the standard remains the same: "Official liability will attach under § 1983 only if 'execution of a [] policy or custom . . . inflicts the injury.'" <u>Gantt v. Whitaker</u>, 203 F. Supp. 2d 503, 509 (M.D.N.C. 2002) (Osteen, Sr., J.) (quoting <u>Collins v. City of Harker Heights</u>, 503 U.S. 115, 121 (1992)) (alterations added).

As in the case of the individual capacity claims against Defendant Jones, the lack of an underlying constitutional injury defeats this claim. Regardless, Plaintiff has failed to allege a policy or custom sufficient to establish an official capacity claim under Section 1983. (<u>See</u> Docket Entry 1, ¶¶ 17-44.) In fact, Plaintiff's allegations regarding the policies of Defendant Jones and the Scotland County Sheriff's Department undermine her claim. (<u>See</u> <u>id.</u>, ¶¶ 50 ("The Plaintiff is informed, believes and

-17-

therefore alleges that it is a policy of Defendant [] Jones, and
the Scotland County Sheriff's Department to separate inmates who
have threatened physical force against another inmate pursuant to
the requirement of N.C. Gen. Stat. § 153A-221 and its applicable
regulations."), 51 ("Plaintiff is informed, believes and therefore
alleges that it is a policy of Defendant [] Jones and the Scotland
County Sheriff's Department to provided [sic] medical attention for
the serious medical needs of inmates upon request pursuant to the
requirement of N.C. Gen. Stat. § 153A-221 and its applicable
regulations.").)

Plaintiff's Response Brief contends:

A thorough reading of the Complaint's constitutional
claims in conjunction with the predicated facts reveals
the following allegations regarding the policies and
customs of the Scotland County Sheriff's and the
liability of the Defendants:

1. The Defendants were on duty and in charge of the jail
where [] Fields was brutally attacked and later died from
his injuries;

2. The Defendants were aware of the unsafe and hostile
interaction between [] Fields and Defendant Murphy;

3. The Defendants were aware that [] Fields and others on
his behalf requested medical attention for his serious
medical needs;

4. The jail at the time of [] Fields' injury and death
was not in compliance with North Carolina law regarding
the minimum requirements for space per prisoner, secure
and safe facilities, supervision of prisoners and medical
care for prisoners;

5. Defendant Jones as Sheriff for Scotland County made
policies which related to the separation of prisoners,
and procurement of medical attention for prisoners;

6. Defendant Jones failed to properly train and supervise
Defendants Nichols and Goins relating to the polices
[sic] of the Scotland County Sheriff's Department and

-18-

laws of the State of North Carolina regarding the separation of prisoners, and procurement of medical attention for prisoners and Defendant Jones was aware of other incidents of deliberate indifference to the safety and wellbeing of the inmates at the jail;

7. Defendants Nichols and Goins knew of the potential violence between [] Fields and Defendant Murphy and of the serious medical needs [sic] [] Fields;

8. Defendant [sic] Nichols and Goins failed to protect [] Fields and provide him with necessary medical attention;

9. As a result of the failure to follow the polices [sic] of the Sheriff of Scotland County and North Carolina law and by the pattern of failing to follow these policies and laws, Defendants Jones, Nichols and Goins caused the injury and death of [] Fields;

10. As a result of the failure of Defendant Jones to properly supervise and train Defendant [sic] Nichols and Goins, [] Fields was injured and died.

(Docket Entry 23 at 9-10 (citations omitted).)

None of these contentions assert that "'execution of a [] policy or custom . . . inflict[ed] the injury.'" Gantt, 203 F. Supp. 2d at 509 (quoting Collins, 503 U.S. at 121). The first five of the foregoing cited paragraphs merely provide background information. Paragraphs six and ten allege a failure to properly train or supervise on the part of Defendant Jones, but without reference to any policy or custom. Paragraphs seven and eight address individual failures on the part of Defendants Nichols and Goins which, similarly, fail to establish any policy or custom. Finally, paragraph nine primarily notes a failure to properly follow the policies of Defendant Jones, which again contradicts any suggestion that "'execution of a [] policy . . . inflict[ed] the injury," id.

-19-

The only contention in the foregoing, cited paragraphs relevant to an official capacity claim concerns the brief mention in paragraph nine of a "pattern of failing to follow these policies . . . ." (Docket Entry 23 at 10.) However, here, the Complaint's recounting of a single incident again proves fatal because it does not offer factual matter showing "a widespread practice that is 'so permanent and well settled as to constitute a custom or usage with the force of law,'" McFadyen, 786 F. Supp. 2d at 954 (quoting City of St. Louis v. Praprotnik, 485 U.S. 112, 127 (1988) (additional quotation marks and citation omitted)). Accordingly, Plaintiff's Section 1983 official capacity claims fail as well.

## IV. State Law Claims

Plaintiff's only remaining claims - battery against Defendant Murphy (Docket Entry 1, ¶¶ 45-48), negligence against Defendant Jones (id., ¶¶ 67-76), and violation of Article I of the North Carolina Constitution (id., ¶¶ 83-87) - arise under state law. "[I]n any civil action of which the district courts have original jurisdiction, the district courts have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a). However, "the district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if . . . the district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). "It has consistently been recognized that pendent

-20-

jurisdiction is a doctrine of discretion, not of plaintiff's right. . . . [I]f the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well." United Mine Workers of Am. v. Gibbs, 383 U.S. 715, 726 (1966). In light of the recommended dismissal of the federal claims at the pleading stage, the Court should decline to exercise supplemental jurisdiction over Plaintiff's state law claims and, instead, should dismiss those claims without prejudice.[9]

## CONCLUSION

Plaintiff has failed to plead sufficient facts to state a claim for violations of 42 U.S.C. § 1983 against Defendants Jones, Nichols, Goins, and Doe in either their individual or official capacities. Moreover, the Court should exercise its discretion under 28 U.S.C. § 1367 to dismiss the remainder of Plaintiff's claims, which arise under state law, without prejudice.

**IT IS THEREFORE RECOMMENDED** that Defendants Jones, Nichols and Goins' Motion to Dismiss (Docket Entry 19) be granted in part in that Plaintiff's claims for violations of 42 U.S.C. § 1983 against Defendants Nichols, Goins and Doe (Docket Entry 1, ¶¶ 49-58) and violations of 42 U.S.C. § 1983 against Defendant Jones (id. ¶¶ 59-

---

[9] To the extent statute of limitations concerns may apply to Plaintiff's refiling of the remaining claims in state court, 28 U.S.C. § 1367(d) provides: "The period of limitations for any claim asserted under subsection (a), and for any other claim in the same action that is voluntarily dismissed at the same time as or after the dismissal of the claim under subsection (a), shall be tolled while the claim is pending and for a period of 30 days after it is dismissed unless State law provides for a longer tolling period."

66) should be dismissed for failure to state a claim upon which relief can be granted.

**IT IS FURTHER RECOMMENDED** that Plaintiff's claims for battery against Defendant Murphy (id. ¶¶ 45-48), negligence against Defendant Jones (id., ¶¶ 67-76), and violation of Article I of the North Carolina Constitution (id. ¶¶ 83-87) be dismissed without prejudice to Plaintiff's pursuit of those claims in state court.

**IT IS ORDERED** that Plaintiff's Motion to Allow Discovery (Docket Entry 35) is **DENIED AS MOOT.**


                              /s/ L. Patrick Auld
                           **L. Patrick Auld**
                    **United States Magistrate Judge**

April 11, 2013